ALBERT JOHNSON v. INTER-STATE IRON COMPANY.[1]

June 20, 1941.

No. 32,767.

[1]Reported in 299 N. W. 1.

*Gillette, Nye, Harries & Montague,* for relator.
*Austin & Wangensteen,* for respondent.

JULIUS J. OLSON, JUSTICE.

*Certiorari* brings for review an order of the industrial commission granting respondent compensation.

The record discloses that respondent commenced work for relator as a laborer about May 1, 1936. Thereafter, from July 1 until the day he was injured, December 8, 1937, he worked as a "drill runner." He worked steadily except for a period of about 45 days during the winter when he was laid off until he assumed his work as a drill runner. He was a man of large build, weighing about 200 pounds, 5 feet 11½ inches in height. His work was arduous, requiring him to carry, without help, bits weighing as much as 150 pounds. At other times he and the man working with him would carry such bits weighing as much as 400 pounds. On December 8, while carrying a pail of water to be used in the performance of his work, he suddenly fell partly on the pail and partly on the frozen ground. A witness testified that "he took a flop * * * his feet went up in the air and he just fell down." From that time on he has been totally and permanently incapacitated from working at any occupation productive of income.

The referee found that the accident, while arising out of and in the course of his employment, was not disabling and "did not cause, accelerate, or aggravate" his prior arthritic condition. He determined that respondent's admitted incapacity was due entirely to his "hypertrophic arthritis" and that this condition was in no way "influenced by the effects of said accidental injury." On appeal, the industrial commission, one member dissenting, determined otherwise by holding that this injury "aggravated said arthritic condition for a period of 52 weeks," hence that he should be compensated at the rate of $20 per week from the day of accident until a year later, but that there should be deducted from such

allowance the number of days respondent "was carried on the payroll of the village of Buhl."

Relator contends that "the question of disability involved herein is almost wholly, if not entirely, a medical question." We may grant that premise. Still, the problem presented is obviously one of fact.

Relator in its brief has painstakingly set out the conflicting claims of the medical experts advanced by the contending parties. Viewing the record in its entirety, as we must, it is apparent that while the injury would be a "slight" one to persons of sound health, the fact remains that there is medical testimony to the effect that such a fall, under the circumstances related, and to one suffering with arthritis, such as respondent was, would cause an aggravation of his preëxisting arthritis. As one of the medical experts testified: "I think he was the wrong man to get hurt at that point, and with the disability he had it brought out the infirmities in line with the progress of his arthritis that caused him to have a total disability"; that "the injury he sustained  *  *  * was definitely the reason for exaggeration" of his arthritis; that "such aggravation could persist for a year or two, after which time the man's condition would have returned to about the condition it was in before the time of the accident, except for natural progression which is taking place because of" his preëxisting arthritis.

Enough has been said, we think, to justify affirmance of the decision made by the commission. Examination of the entire record discloses that, while the case is of the borderline variety, we cannot say that the findings of the commission are without adequate support.

Writ discharged and award affirmed. Respondent is allowed $75 attorneys' fees in this court, plus statutory costs and disbursements.